**Opinion filed December 15, 2011**



## In The

# Eleventh Court of Appeals

_____

## No. 11-10-00202-CR

_____

## CHARLES EDWARD TRAYLOR A/K/A CHARLES EDWARD CRAIN, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**
**Taylor County, Texas**
**Trial Court Cause No. 23688A**

### M E M O R A N D U M   O P I N I O N

The jury convicted Charles Edward Traylor a/k/a Charles Edward Crain of possession of cocaine in the amount of four grams or more but less than 200 grams. Appellant pleaded true to two enhancement allegations. The trial court found the enhancement allegations to be true and assessed appellant's punishment at twenty-five years confinement. We affirm.

*Issues Presented*

Appellant presents seven points of error. In his first three points, appellant challenges the legal and factual sufficiency of the evidence to support his conviction. Specifically, in his first point, appellant contends that the State failed to establish the reliability of testimony by an expert

witness that the substance was cocaine. Therefore, appellant asserts that the evidence was legally insufficient to prove that the seized substance was cocaine. In his second and third points, appellant contends that the evidence was legally and factually insufficient to prove that he intentionally or knowingly possessed cocaine because the evidence was insufficient to link him to the suspected cocaine. In his fourth point, appellant contends that the State violated his due process rights because police officers gave perjured testimony and tampered with the physical evidence to obtain the conviction. Consequently, appellant asserts that his conviction should be vacated under the Due Process Clause of the United States Constitution. In his fifth through seventh points, appellant contends that his trial counsel rendered ineffective assistance of counsel by failing to file a motion to suppress the evidence, failing to object to the prosecutor's comments about his post-arrest silence, and failing to object to the admissibility of the cocaine on the ground that the State did not sufficiently establish the chain of custody.

*Sufficiency of the Evidence*

We will review appellant's challenges to the sufficiency of the evidence under the currently applicable legal sufficiency standard of review. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). The standard of review for an appellate court in evaluating the legal sufficiency of the evidence is to determine whether any rational finder of fact could have found the existence of the elements of the offense after viewing all of the evidence in a light most favorable to the verdict. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The appellate court's duty is not to sit as a thirteenth juror reweighing the evidence or deciding whether it believes the evidence established the elements in question beyond a reasonable doubt. *Blankenship v. State*, 780 S.W.2d 198, 206–07 (Tex. Crim. App. 1988). The sufficiency test must be applied to the application paragraph in a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

In a prosecution for possession of a controlled substance, the State must prove that the accused exercised care, custody, control, or management over the substance and that the accused knew the substance was contraband. TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West 2010); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988). The State does not have to prove that the accused had exclusive possession of the contraband; joint possession is sufficient to sustain a conviction. *Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986). When the accused is not shown to

have had exclusive possession of the place where the contraband was found, the evidence must link the accused to the contraband and establish that the accused's connection with the drug was more than fortuitous. *Evans*, 202 S.W.3d at 161–62; *Pollan v. State*, 612 S.W.2d 594, 596 (Tex. Crim. App. 1981). Courts have recognized a number of factors that may link an accused to the drug. *Evans*, 202 S.W.3d at 162 n.12. The legal issue with respect to such "links" is "whether there was evidence of circumstances, in addition to mere presence, that would adequately justify the conclusion that the defendant knowingly possessed the substance." *Evans*, 202 S.W.3d at 161–62 & n.9. No set formula exists to dictate a finding of links sufficient to support an inference of knowing possession of contraband. *Isbell v. State*, 246 S.W.3d 235, 238 (Tex. App.—Eastland 2007, no pet.); *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.). It is not the number of links that is dispositive, but rather the logical force of all the evidence, direct and circumstantial. *Evans*, 202 S.W.3d at 162.

The record shows that, on October 17, 2008, at about 11:40 p.m., Abilene police officers received a call regarding a problem in the area of South First Street and the Winters Freeway. Sergeant Jimmy Smith testified that he drove to the scene but did not see anything at that location. Sergeant Smith looked across the railroad tracks and saw a vehicle under the overpass at North First Street and the Winters Freeway. Sergeant Smith relayed information about this location over the police radio, and he drove to the scene. He said that the vehicle, which was a Suburban, was facing east and that he was driving west. As Sergeant Smith passed the vehicle, he noticed a pile of debris on the ground in the vicinity of the back passenger door on the driver's side of the vehicle. Sergeant Smith testified that he did not see anything under the driver's door of the vehicle. Sergeant Smith made a U-turn and then stopped behind the Suburban. At that time, Officers Chris Lazirko and Michael Rafferty arrived at the scene in a patrol car. Officer Rafferty parked the patrol car behind Sergeant Smith's vehicle. Officer Rafferty turned on his overhead lights for safety reasons. The video camera in the patrol car activated when Officer Rafferty turned on the lights. A copy of the videotape of the incident was admitted into evidence as State's Exhibit No. 1 and played for the jury. We have reviewed State's Exhibit No. 1, and it is consistent with the officers' testimony.

When the officers arrived, a man was sitting in the driver's seat of the Suburban. Officer Rafferty approached the Suburban and talked to the man, whom the officers identified as appellant. Officer Lazirko looked through a window on the passenger's side of the Suburban. He

saw that no one other than appellant was in the vehicle. Officer Lazirko walked around to the driver's side of the vehicle. The vehicle had a flat tire. Appellant told Officer Rafferty that the Suburban belonged to a friend of his who was in jail. Appellant said that he had gotten the vehicle out of impound that day and was using it while his friend was in jail. Appellant also told Officer Rafferty that he had clipped the curb and flattened the tire while trying to take his girlfriend, Shirley Lee, and a male passenger, Dee McClain, to the house in the 5300 block of Laguna where appellant and Lee lived. The officers noticed a foul smell in the area. Appellant told Officer Rafferty that McClain had kidney problems and had defecated in the backseat of the vehicle. Appellant said that he had cleaned up the mess with towels and had tossed them into the street.

Officer Rafferty testified that he saw a plastic bag on the ground near the driver's door as he walked up to talk to appellant. Officer Rafferty said that the bag was "kind of rolled up next to the door area" and that it was "[r]ight at the edge of the driver's side door because [he] was practically stepping on it as [he] was speaking with [appellant]." Officer Rafferty believed that the bag had come from inside the Suburban. He said that appellant would have run over the bag had it been there before he arrived at the scene. Officer Rafferty said that the bag had not been run over. Officer Rafferty also saw some towels on the ground near the rear tire on the driver's side of the vehicle.

Officer Lazirko testified that, "[o]n the driver's side just below the driver's door[, he] noticed there was a, looked like a white plastic shopping bag that was rolled up and laying on the ground just underneath the driver's door." Officer Lazirko said that the bag was "in line with the front left tire" of the vehicle. He testified that appellant would have run over the bag had it been there before appellant arrived at the location. Officer Lazirko said that the white bag was "not even a few feet" away from appellant. Officer Lazirko believed that the bag had just been dropped out of the vehicle.

For safety reasons, Officer Lazirko did not want to bend down between Officer Rafferty and appellant to get the white bag. Therefore, he told Officer Rafferty to kick the bag to him, and Officer Rafferty did so. The bag ended up by the back tire on the driver's side of the vehicle. Officer Lazirko went to the patrol car to get a pair of latex gloves. Sergeant Smith moved his vehicle so that Officer Lazirko could move the patrol car directly behind appellant's vehicle. The move of the vehicles is depicted on the videotape. When Officer Lazirko moved

4

the patrol car directly behind the Suburban, the white bag came into view of the video camera. The videotape shows the bag near the back tire on the driver's side of the vehicle.

Officer Lazirko picked up the bag and opened it. He testified that it was a white Wal-Mart shopping bag. Officer Lazirko found two clear plastic baggies inside the Wal-Mart bag. He said that these baggies contained "two large rocks of [an] off[-]white substance which [he] recognized to be crack cocaine." Officer Lazirko testified that the rocks were wet and had the consistency of dough or play dough, which meant that they had been made recently. He said that the rocks would have been harder after they dried. He said that the rocks were not smashed and, therefore, had not been run over.

Sergeant Smith performed a preliminary field test of the rocks. With their wet consistency, the rocks weighed a total of fifty-two grams. During the field test, the substance tested positive for crack cocaine. Appellant told Officer Rafferty that the substance did not belong to him. The officers placed appellant under arrest. Officer Lazirko searched the Suburban. He testified that he found a usable amount of marihuana in the center console of the vehicle. Officer Lazirko did not find drug paraphernalia or cash in the vehicle.

Officer Lazirko placed the cocaine into two heat-sealed envelopes and then booked it into evidence at the Law Enforcement Center. Officer Lazirko testified that the cocaine remained there until it was taken to the Texas Department of Public Safety Crime Laboratory for testing. Officer Lazirko testified that State's Exhibit No. 2 was the subject Wal-Mart bag and that State's Exhibit No. 3 was the crack cocaine that was in the Wal-Mart bag.

Abilene Police Special Operations Agent Chad Jenkins testified that, on December 3, 2008, he took the evidence in this case to the DPS crime lab for testing. Agent Jenkins said that the street value of cocaine is about $100 a gram.

On December 17, 2008, Herman Carroll, a forensic scientist with the DPS crime lab in Abilene, analyzed the substance identified as State's Exhibit No. 3. Carroll, who is a chemist, testified about the procedure that was followed at the DPS crime lab in Abilene for testing substances. DPS analysts first perform a preliminary examination of a substance using a color test. If the color test yields a positive result, the analysts then perform a confirmational examination of the substance, usually using a gas chromatograph mass spectrometer (GCMS). Carroll followed this procedure in this case.

Carroll recognized State's Exhibit No. 3 as a substance he had analyzed because its packaging contained his initials, a date, and a case number that was unique to the Abilene DPS crime lab. Carroll said that, before he tested the evidence, it was contained in two separate plastic baggies. Carroll performed separate color tests on the substances from both bags. He said that the substances from both bags tested positive for cocaine. Carroll testified that, because both substances tested positive and looked the same, he made a combination sample of the substances and then performed a GCMS analysis of the combination substance. The GCMS analysis showed that the substance contained base-form cocaine. Based on his analysis, Carroll concluded that State's Exhibit No. 3 contained base-form cocaine and weighed 19.31 grams. Carroll testified that the base form of cocaine is also known as crack cocaine.

Shirley Lee testified that appellant was her boyfriend. She said that, on the night that appellant was arrested in this case, appellant had picked her up at 5210 Congress Street between 10:30 and 11:30 p.m. Lee said that McClain was in the backseat of the vehicle when appellant picked her up. She said that appellant and McClain were both drunk. She also said that McClain had had a bowel movement in the backseat. Lee testified that she got mad at appellant because he was driving erratically and that she and appellant started yelling at each other. Lee said that, when appellant turned the "corner" of North First Street and North Clack Street, "he took off real fast, he started fishtailing[,] and he hit the curb." Lee said that one of the vehicle's tires blew out during the incident. She testified that, after the vehicle came to a stop, she got out and walked to her house on Laguna Street. There was no evidence as to when McClain left the scene.

In his first point, appellant contends that the State failed to establish the reliability of Carroll's testimony that the seized substance was cocaine because "no testimony was adduced at trial that [Carroll's] method of testing the suspected cocaine was reliable or that the testing method used, if reliable, was properly performed in [appellant's] case." Based on the alleged lack of reliability of Carroll's testimony, appellant asserts that the testimony amounted to no evidence that the substance was cocaine. Therefore, appellant argues that the evidence was legally insufficient to prove that he possessed cocaine.

As a prerequisite to presenting a complaint for appellate review, an appellant must show that he timely presented a specific objection to proffered evidence and that the trial court ruled on the objection or refused to rule. TEX. R. APP. P. 33.1(a); *Hernandez v. State*, 53 S.W.3d 742, 745 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). Appellant did not object to the

6

qualifications or testimony of Carroll. Accordingly, appellant has not preserved any complaint as to the admissibility of Carroll's testimony for appellate review. Carroll testified that the substance contained base-form cocaine and weighed 19.31 grams. Expert testimony by a chemist is often used in possession-of-controlled-substance cases to prove the nature of the controlled substance.[1] This type of testimony has been found to be reliable. *Williams*, 936 S.W.2d at 404. We conclude that Carroll's unchallenged expert testimony is sufficient to establish that the seized substance was cocaine. We note that the State likely would have been able to overcome an objection to the reliability of Carroll's testimony had appellant lodged such an objection at trial. Additionally, Carroll's testimony was not the only evidence that the seized substance was cocaine. Officer Lazirko testified that he recognized the "two large rocks" to be crack cocaine. During the field test performed by Sergeant Smith, the substance tested positive for cocaine. We hold that the evidence is sufficient to establish that the seized substance contained cocaine. Appellant's first point is overruled.

In his second and third points, appellant contends that the officers gave false testimony in an effort to link him to the cocaine. Specifically, appellant contends that Officers Lazirko and Rafferty committed perjury by testifying that they found the cocaine in close proximity to him under the driver's side door. Appellant asserts that the alleged perjured testimony of the officers conflicted with the videotape of the incident, which depicted the white bag near the rear tire. Appellant states in his brief that "[c]ommon sense indicates that this account of events related by both officers was fabricated by the officers in order to create a sufficient evidentiary link between [appellant] and the suspected cocaine he was charged with possessing." Appellant also states that "the testimony of both officers is not credible whatsoever." Based on the claimed lack of credible evidence linking him to the cocaine, appellant contends that the evidence is insufficient to establish that he intentionally or knowingly possessed crack cocaine.

We have summarized the evidence above, and we hold that the evidence is sufficient to support the jury's verdict. If believed, the officers' testimony established that appellant was alone and in the driver's seat of the Suburban when they arrived at the scene, that the officers

---

[1]*See*, *e.g.*, *Guerrero v. State*, 305 S.W.3d 546 (Tex. Crim. App. 2009) (testimony by DPS chemist that substances contained controlled substance); *Taylor v. State*, 328 S.W.3d 574 (Tex. App.—Eastland 2010, pet. ref'd) (testimony by DPS chemist from Abilene crime lab that substances contained controlled substance); *Uranga v. State*, 247 S.W.3d 375 (Tex. App.—Texarkana 2008), *aff'd*, 330 S.W.3d 301 (Tex. Crim. App. 2010) (testimony by DPS from Abilene crime lab that substance contained controlled substance); *Graham v. State*, 201 S.W.3d 323 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (testimony by DPS chemist that substances contained controlled substance); *Williams v. State*, 936 S.W.2d 399 (Tex. App.—Fort Worth 1996, pet. ref'd) (testimony by DPS chemist that substance contained controlled substance).

7

found the cocaine under the driver's side door in very close proximity to appellant, and that appellant would have run over the Wal-Mart bag containing the cocaine if it had been on the ground before he arrived at the scene. Officer Lazirko also found marihuana in the center console of the Suburban. The videotape of the incident was played for the jury. As the trier of fact, the jury was the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979). The jury had the responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The jury was free to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Thus, the jury was free to believe the officers' testimony. *Id.* An appellate court may not reevaluate the weight and credibility of the record evidence and thereby substitute its judgment for that of the jury. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). As demonstrated by its verdict, the jury believed the officers. The evidence sufficiently linked appellant to the cocaine to establish that he intentionally and knowingly possessed it.

Officer Lazirko explained that Officer Rafferty kicked the white bag to him before he moved his patrol car directly behind the Suburban. This testimony provided a reasonable explanation as to why the bag was not under the driver's side door when it was first depicted on the videotape. As noted above, we have reviewed the videotape, and it is consistent with the officers' testimony. The evidence also provided a reasonable explanation as to why the cocaine weighed fifty-two grams when Sergeant Smith field-tested it and about nineteen grams when Carroll analyzed it. Officer Lazirko testified that the cocaine was wet when he found it. The cocaine would have dried and, therefore, weighed much less by the time that Carroll analyzed it.

Based on the evidence linking appellant to the cocaine, a rational jury could have found beyond a reasonable doubt that appellant intentionally or knowingly possessed the cocaine. Appellant's second and third points are overruled.

### Due Process Issue

In his fourth point, appellant claims that his due process rights were violated because his conviction resulted from false evidence. A prosecutor's knowing use of perjured testimony violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Pyle v. Kansas*, 317 U.S. 213, 215–16 (1942); *Mooney v. Holohan*, 294 U.S. 103, 112 (1935); *Ex*

*parte Castellano*, 863 S.W.2d 476, 479–80 (Tex. Crim. App. 1993). However, we have reviewed all the evidence, and nothing in the record supports appellant's contentions that the officers gave false testimony and tampered with the evidence. Appellant did not present any evidence to the trial court to support such a claim. The record does not demonstrate that appellant's due process rights were violated. Appellant's fourth point is overruled.

*Ineffective Assistance of Counsel*

In his fifth, sixth, and seventh points, appellant contends that he received ineffective assistance of trial counsel. To determine whether appellant's trial counsel rendered ineffective assistance, we must first determine whether appellant has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for counsel's errors. *Wiggins v. Smith*, 539 U.S. 510 (2003); *Strickland v. Washington*, 466 U.S. 668 (1984); *Andrews v. State*, 159 S.W.3d 98 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 814. Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Rarely will the record on direct appeal contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Id.* In light of these limitations, it is well settled that claims of ineffective assistance of counsel should usually not be raised on direct appeal because the record is often undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Andrews*, 159 S.W.3d at 103; *Thompson*, 9 S.W.3d at 813–14.

9

Appellant claims that his trial counsel rendered ineffective assistance of counsel in three respects: (1) failing to file a motion to suppress the evidence; (2) failing to object to the prosecutor's comments regarding his post-arrest silence; and (3) failing to object to the admissibility of the cocaine on the ground that the State did not sufficiently establish the chain of custody of the cocaine. Appellant did not raise these claims in a motion for new trial.[2] Therefore, he did not present any evidence to the trial court in support of them. The record is silent as to why appellant's trial counsel did not file a motion to suppress, object to statements by the prosecutor that allegedly commented on appellant's post-arrest silence, or object to the admission of the cocaine on a chain-of-custody ground. The record is also silent as to the reasoning that appellant's trial counsel may have employed in conducting the trial. Because the record contains no evidence of the reasoning behind trial counsel's actions, we cannot conclude that counsel's performance was deficient. Thus, appellant has failed to overcome the presumption that his trial counsel's conduct was reasonable and professional. *Bone*, 77 S.W.3d at 833; *Green v. State*, 191 S.W.3d 888, 894–95 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (Because the defendant failed to present evidence rebutting the presumption that trial counsel had plausible reasons for their actions, the court could not conclude that their performance was deficient.). Appellant's fifth, sixth, and seventh points are overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.

TERRY McCALL

JUSTICE

December 15, 2011

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Hill, J.[3]

---

[2]Appellant did raise two ineffective-assistance-of-counsel claims in a motion for new trial: (1) that his trial counsel failed to subpoena and call witnesses that were necessary to present an effective defense and (2) that his trial counsel failed to adequately cross-examine the State's witnesses. However, no hearing was held on the motion, and the trial court denied it.

[3]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.