Ronald Keith **GRAHAM**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 14–05–00662–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 24, 2006.

Crespin Michael Linton, Houston, for appellant.

Joseph Brian Dear, Houston, for appellee.

Panel consists of Justices ANDERSON, EDELMAN, and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

Appellant Ronald Keith Graham challenges the legal sufficiency of the evidence supporting his conviction for possession of a controlled substance (methamphetamine) weighing at least 400 grams. Appellant also asserts that the trial court erred in denying his motion to suppress, and in refusing his request for an exclusionary-rule jury instruction. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In January 2004, Detective Clark of the Harris County Sheriff's Department seized a methamphetamine lab located on Main Street in Houston. Around this same time, Detective Clark observed a dark blue Ford pickup truck with a bright orange tailgate parked outside this lab. Detective Clark discovered that this truck was registered to appellant, who was apparently known as "The Professor" in the illegal narcotics community. Appellant was not present at the time the Main Street lab was seized, but his girlfriend, Tania Nieves was arrested in that seizure. Detective Clark learned that the Texas Board of Pardons and Paroles had issued a felony arrest warrant for appellant based on an alleged parole violation.

Upon further investigation, Detective Clark located Nieves' residence at a motel in Manvel, Texas. On April 20, 2004, in an attempt to find appellant, Detective Clark followed Nieves from the motel to a travel trailer located behind a concrete plant near Highway 6 in Manvel. Detective Clark spotted appellant's truck outside the trailer and contacted Sergeant Floyd Goodwin of the Texas Department of Public Safety and Deputy Tony Pena of the Brazoria County Sheriff's Department. Sergeant Goodwin and Deputy Pena immediately joined Detective Clark at the

scene to conduct a felony arrest. Sergeant Goodwin and Detective Clark approached the trailer and announced, "Police, arrest warrant, open the door." There was no response, but the door was partially open and Detective Clark called out, stating, "Mr. Graham, open the door. Ronald Graham, open the door." Detective Clark saw a head rise from a bed adjacent to the door, and he immediately recognized appellant from the parole photograph. Upon identifying appellant, Detective Clark and Sergeant Goodwin pushed the front door open and entered the residence to make the arrest. The officers conducted a protective sweep of the trailer, and during this time, saw what appeared to be a clandestine methamphetamine laboratory.

After arresting and handcuffing appellant, the officers escorted him back to the patrol car to request consent from appellant to search the trailer. Sergeant Goodwin advised appellant of his rights. When asked, appellant indicated he knew how to read and Sergeant Goodwin read to him from a consent-to-search-form, and also removed the handcuffs from appellant so that appellant could read the document himself. Sergeant Goodwin then asked appellant if the officers could search the trailer, and appellant responded, "Why not? When you're done, you're done." After reading the consent-to-search form, appellant stated that he understood his rights and signed the document. The officers then searched the trailer and its contents, discovering several containers that they suspected contained methamphetamine or were chemicals that were precursors in the production of methamphetamine.

Appellant was charged in a two-count indictment with the first-degree felony of possession of a controlled substance, and with the second-degree felony of posses-

sion of chemicals with the intent to manufacture methamphetamine.

Before trial, appellant filed a motion to suppress the evidence obtained in the search. The trial court denied the motion and trial commenced. A jury found appellant guilty as charged on both counts. The trial court, in a separate punishment proceeding, assessed a sentence of forty-five years' confinement and a $10,000.00 fine in count one, and twenty years' confinement, with a $5,000.00 fine in count two.

## II. Issues Presented

Appellant asserts three issues on appeal:

(1) The trial court erred in denying his pre-trial motion to suppress the evidence obtained in the search of the trailer.

(2) The trial court erred in denying appellant's proposed jury instruction that the consent to search was involuntary.

(3) The evidence is legally insufficient to support appellant's conviction for possession of methamphetamine, in an amount of at least 400 grams.

## III. Analysis

### A. Is the evidence legally sufficient to support appellant's conviction?

■ We address appellant's legal-sufficiency challenge (third issue) first. In evaluating a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App.2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim.App.1984). The verdict may not be overturned unless it is irrational or unsupported by proof

beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex.Crim.App. 1991). The jury, as the trier of fact, "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex.Crim.App.1999). The jury may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex.Crim.App.1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim.App.1997).

██ Appellant challenges his conviction on the grounds that the evidence allegedly does not show that he possessed at least 400 grams of a controlled substance, namely methamphetamine. To convict a defendant for possession of a controlled substance, the State must show that the defendant knowingly or intentionally possessed the controlled substance. *Seals v. State*, 187 S.W.3d 417, 419 (Tex.Crim.App. 2005). A controlled substance is defined as "a substance, including a drug, an adulterant, and a dilutant, listed in Schedule I through V or Penalty Groups 1, 1–A, or 2 through 4." *Id.* (*citing* TEX. HEALTH & SAFETY CODE ANN. § 481.002(5) (Vernon Supp. 2005)); *see also Chapman v. United States*, 500 U.S. 453, 460, 111 S.Ct. 1919, 1925, 114 L.Ed.2d 524 (1991). A controlled substance includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance. *Seals*, 187 S.W.3d at 419. Section 481.002(49) of the Texas Health and Safety Code defines adulterant or dilutant as "any material that increases the bulk or quanti-

ty of a controlled substance, regardless of its effect on the chemical activity of the controlled substance." TEX. HEALTH & SAFETY CODE ANN. § 481.002(49).

In this case, the indictment alleged as follows:

> that RONALD KEITH GRAHAM hereinafter styled Defendant, on or about the 20th day of April 2004, did then and there intentionally and knowingly possess a controlled substance listed in Penalty Group One (1) namely, methamphetamine and the amount of said controlled substance, by aggregate weight, *including any adulterants and dilutants*, at least four hundred (400) grams. . . . (emphasis added).

Appellant contends that the evidence is legally insufficient because the State failed to establish how much of the substance was actually methamphetamine. He relies on the following testimony from Minh Nguyen, a chemist with the Texas Department of Public Safety, to show that he did not possess at least 400 grams:

> [Appellant's counsel]: —those samples, they're all listed here in your report. And it has—seems to have a—
>
> [Mr. Nguyen]: Under 1 percent.
>
> [Appellant's counsel]: Okay. So they all say methamphetamine; and then it has under 1 percent. Can you explain what that means?
>
> [Mr. Nguyen]: What we do is this amount you divide by the total weight, and you have the 100 to your less than 1 percent. That why we write that.
>
> [Appellant's counsel]: Okay. So, that, basically, is meaning—saying that's less than—that sample, even though it's 1.07 kilograms, it's less than 1 percent methamphetamine.
>
> [Mr. Nguyen]: Yes.

Appellant contends that this testimony demonstrates that the actual methamphet-

amine in the solutions was less than one percent of the solution, and because one percent of 18,636.10 grams is 186.361 grams, he did not possess at least 400 grams of methamphetamine. First, it is not clear based on the testimony that Nguyen meant every solution tested contained only one percent, or only some of them.[1] In addition, when asked whether the person who possessed these mixtures possessed at least 400 grams of methamphetamine, Nguyen answered affirmatively.

■■■ Next, even if the mixtures contained other liquids, the State is no longer required to determine the amount of controlled substance and the amount of adulterant and dilutant that constitute the mixture. *See Seals*, 187 S.W.3d at 420 (overruling the requirement "that the State prove intent to increase the bulk or quantity of the controlled substance"); *see also Jones v. State*, 195 S.W.3d 279, 286 (Tex.App.-Fort Worth 2006) (following *Seals* and holding that the weight of an adulterant or dilutant—i.e., the bleach— must be added to the aggregate weight of the controlled substance regardless of whether the bleach was used or intended to increase the bulk of the controlled substance); *Erskine v. State*, 191 S.W.3d 374, 378 (Tex.App.-Waco 2006, no pet.) (holding that lab analyst testimony that net weight of rocks seized near defendant's car was 5.06 grams and that they contained cocaine, was sufficient to support conclusion that defendant possessed a controlled substance in aggregate weight, including adulterants or dilutants, of four grams or more but less than 200 grams). Thus, "any substance that is added to or mixed with a controlled substance, regardless of when, how, or why that substance was added, may be added to the aggregate weight of the controlled substance as an adulterant or dilutant." *Seals*, 187 S.W.3d at 420; *accord Melton v. State*, 120 S.W.3d 339, 343 (Tex.Crim.App.2003).[2] The State need only prove that the controlled substance, including any adulterants or dilutants, equals the minimum weight set forth in the indictment. *Melton*, 120 S.W.3d at 343; *Isassi v. State*, 91 S.W.3d 807, 810 (Tex.App.-El Paso 2002, pet. ref'd).

In this case, at least 21 liquids tested, marked as exhibits, and introduced into

---

1. We note that at least 21 exhibits were admitted into evidence, each containing methamphetamine, among other liquids. Nguyen testified as to the weight of each of these "mixtures," and concluded that the total weight was 18,636.10 grams.

2. *Melton* involved a single plastic bag containing 35 to 40 rocks of a substance that appeared to be crack cocaine. 120 S.W.3d at 340. The weight of the bag was 6.4 grams and the rocks field-tested positive for cocaine. *Id.* The Department of Public Safety chemist testified that he tested an unspecified number of the rocks from this bag using an ultraviolet spectrophotometer and a gas chromatography mass spectrometer and confirmed each contained cocaine. *Id.* at 341. He testified that the weight of the substance in the bag was 5.77 grams. *Id.* at 340. The court of appeals found the evidence legally insufficient to prove that the items in the bag included four grams of crack cocaine because some of the 35 to 40 items may not have contained any cocaine and concluded that if one of the "rocks" was composed entirely of a non-cocaine substance, then those substances were not adulterants or dilutants and their weight could not be added to the aggregate weight of the cocaine. *Id.* at 341. The Court of Criminal Appeals disagreed and held that the court of appeals should not have treated each rock as a separate controlled substance but should have treated all the rocks as a mixture because the term "controlled substance" includes the "aggregate weight of any mixture, solution, or other substance containing a controlled substance." *Id.* at 343 (quoting Tex. Health & Safety Code Ann. § 481.002(5)). The Court of Criminal Appeals concluded it was reasonable for the jury to infer that the 35 to 40 rocks formed a mixture of crack cocaine, even if some of the "rocks" were composed only of non-cocaine substances. *Id.* at 343–44.

evidence contained methamphetamine and adulterants and dilutants. A chemist so testified, and also testified to the weight of the liquid in each of the containers testing positive for methamphetamine. The aggregate weight of the controlled substance was derived by adding the weights of each of the liquids that contained methamphetamine. The State did not have to establish the weight of the "pure" methamphetamine in each jar of liquid versus the weight of any of the liquid that was an adulterant or dilutant, but only that the aggregate weight of the controlled substance mixture equaled the alleged minimum weight. *See Melton,* 120 S.W.3d at 344. The State satisfied this burden. A rational trier of fact could have found beyond a reasonable doubt that appellant possessed a controlled substance "by aggregate weight, including adulterants or dilutants, of at least 400 grams." *See Melton,* 120 S.W.3d at 344. Thus, the evidence is legally sufficient to support appellant's conviction. We overrule appellant's third issue.

### B. Did the trial court err in denying appellant's pre-trial motion to suppress?

■■■ In his first issue, appellant contends that the trial court abused its discretion in denying his pre-trial motion to suppress the evidence seized during the search of the trailer. We review the trial court's ruling on a motion to suppress under an abuse-of-discretion standard. *Long v. State,* 823 S.W.2d 259, 277 (Tex. Crim.App.1991). A trial court's ruling on a motion to suppress, if supported by the record, will not be overturned. *Brooks v. State,* 76 S.W.3d 426, 430 (Tex.App.-Houston [14th Dist.] 2002, no pet.). At a suppression hearing, the trial court is the sole finder of fact and is free to believe or disbelieve any or all of the evidence presented. *Id.* We give almost total deference to the trial court's determination of

historical facts that depend on credibility and demeanor, but we review de novo the trial court's application of the law to the facts if resolution of those ultimate questions does not turn on the evaluation of credibility and demeanor. *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).

■■■ When, as in this case, the trial court fails to file findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court implicitly made findings of fact that support its ruling as long as those implied findings of fact are supported by the record. *State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App.2000). Because the trial judge was free to believe any or all evidence presented and to make a determination of historical facts supported by the record after evaluating the credibility and demeanor of the witnesses at the hearing, we give the trial court's decision deference. *See Guzman,* 955 S.W.2d at 89.

■■■ Both the Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution forbid unreasonable searches and seizures. *See Brimage v. State,* 918 S.W.2d 466, 500 (Tex.Crim.App.1996); *see also Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). This concept is so fundamental that the law imposes a duty to exclude evidence seized in illegal invasions, both to discourage lawless police conduct, and because courts may not endorse lawless invasions of citizens' constitutional rights by permitting the government unhindered use of the fruits of such invasions. *See Terry v. Ohio,* 392 U.S. 1, 12-13, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Warrantless searches are unreasonable per se unless they fall under one of a few specific exceptions. *See Reasor v. State,* 12 S.W.3d 813, 817 (Tex.Crim.App. 2000); *see also Mincey,* 437 U.S. at 390, 98

S.Ct. 2408. Consent to search is one of the well-established exceptions to the constitutional requirements that a police officer have both a warrant and probable cause before a search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

Appellant contends that he did not voluntarily consent to the search. At the suppression hearing, he testified that he did not realize he signed a consent-to-search form because an officer had him sign the document while his hands were still handcuffed behind his back. Appellant's girlfriend, Tania Nieves testified that when she returned to the trailer, she saw appellant wearing handcuffs and observed the officers helping him sign something.

Sergeant Goodwin and Deputy Pena also testified at the suppression hearing. Giving his account, Sergeant Goodwin stated that he advised appellant of his rights, and asked him if he could read. When appellant responded that he understood his rights and could read, Sergeant Goodwin obtained a consent-to-search form from Deputy Pena, read the form to appellant, and removed the handcuffs from appellant so that appellant could read the document himself. Sergeant Goodwin asked appellant if the officers could search the trailer, and appellant stated, "Why not? When you're done, you're done." According to Sergeant Goodwin's testimony, after reading the document, appellant stated that he understood his rights and signed the consent-to-search form. Deputy Pena corroborated this testimony, and also stated that appellant was very cooperative and no force was used to make him sign the document.

■■■■■ Although the federal constitution requires the State to prove the voluntariness of consent only by a preponderance of the evidence, the Texas Constitution requires the State to prove by clear and convincing evidence that consent to search was freely given. *Reasor v. State*, 12 S.W.3d 813, 818 (Tex.Crim.App.2000). To be valid, a consent to search must be positive and unequivocal, and must not be the product of duress or coercion, either express or implied. *Id.* at 818; *Allridge v. State*, 850 S.W.2d 471, 493 (Tex.Crim. App.1991). The trial court must look at the totality of the circumstances surrounding the statement of consent in order to determine whether consent was given voluntarily. *Reasor*, 12 S.W.3d at 818. A showing that a suspect has been warned that he does not have to consent to the search and has a right to refuse is of evidentiary value in determining whether a valid consent was given. *Allridge*, 850 S.W.2d at 493.

■■■■ At a suppression hearing, the trial court determines the facts and may accept or reject any or all of the evidence presented. *Brooks*, 76 S.W.3d at 430. Appellant's testimony clearly conflicts with the testimony of the officers. When viewing the "totality of the circumstances," the trial court was free to believe each officer's testimony and disbelieve appellant's testimony. *Johnson v. State*, 803 S.W.2d 272, 287 (Tex.Crim.App.1990). Sergeant Goodwin's and Deputy Pena's testimony clearly shows that appellant's consent was voluntary. *Compare Vargas v. State*, 18 S.W.3d 247, 254 (Tex.App.-Waco 2000, pet. ref'd.) (holding that clear and convincing evidence that accused was not coerced nor under duress when he consented to the search of the vehicle), *with Moss v. State*, 878 S.W.2d 632, 643 (Tex.App.-San Antonio 1994, pet. ref'd) (holding State did not meet burden of proof with clear and convincing evidence on voluntariness of consent where appellant was not given *Miranda* warnings or advised of his right to

refuse consent and was arrested with guns pointed at him and five-year-old daughter). Deferring, as we must, to the trial court's determinations of credibility and historical facts when it denied appellant's motion to suppress, we cannot conclude that the trial court abused its discretion in determining that appellant's consent was voluntary or that the State failed to meet its burden of establishing the voluntariness of appellant's consent by clear and convincing evidence. Accordingly, we overrule appellant's first issue.

**C. Did the trial court err in denying appellant's proposed jury instruction that his consent to the search was involuntary?**

In his second issue, appellant contends that the trial court erred in refusing to add the following jury instruction to the court's charge:

> You are instructed that under our law, applied to this case, any search of the accused's premises without voluntary consent would not be lawful. Where an officer has physically forced the accused to sign a written consent to search form, then, under the circumstances, a search would be unlawful. If an accused has signed a consent to search form by his own free will then under the circumstances a search so made would be lawful.
>
> Now, if you find from the evidence that any peace officer including officers Terry Pena or Floyd Goodwin, on the occasion in question, physically forced the accused to sign a written consent to search form, or if you have reasonable doubt as such matters that written consent to search was voluntary, and you will not consider the evidence obtained as a result of the seizure of such objects on the accused's premises.
>
> If you believe beyond a reasonable doubt that he peace officer obtained the written consent to search from the accused's own free will you may consider the evidence obtained as a result of the seizure of such objects on the accused's premises.

The trial court denied this proposed jury instruction after concluding that there was no evidence before the jury that suggested that appellant's consent to search was involuntary. Our resolution of this issue is controlled by article 38.23 of the Texas Code of Criminal Procedure, which provides, in pertinent part as follows:

> (a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2003). The only question is whether, under the facts of a particular case, the evidence raises an issue so as to require a jury instruction. *Murphy v. State*, 640 S.W.2d 297, 299 (Tex.Crim.App. 1982). When no such issue is raised by the evidence, the trial court acts properly in refusing a request to charge the jury with this instruction. *Id.* In his appellate brief, appellant contends that the instruction was necessary because there was evidence that appellant's consent to the search was not made freely and voluntarily. Appellant concedes that he offered no evidence before the jury concerning the issue of consent; he relies entirely on Sergeant Goodwin's testimony that the offi-

cers had drawn their guns at the time of the arrest. The mere fact that Sergeant Goodwin used a weapon during the arrest is not enough to raise a fact issue as to whether appellant's subsequent consent to search was voluntary. Sergeant Goodwin specifically stated that the officers probably displayed their guns before making the arrest because the officers were acting on a felony arrest warrant.

There was no evidence at trial that appellant refused to consent or that his consent was not made freely and voluntarily. The only evidence regarding this issue was raised at the suppression hearing, outside the presence of the jury. We conclude there was no fact question concerning the validity of the search, and the trial court did not err by denying the requested exclusionary-rule instruction. *See Brooks v. State,* 642 S.W.2d 791, 799 (Tex.Crim.App. 1982). We overrule appellant's second issue.

Having overruled all of appellant's issues, we affirm the trial court's judgment.