**Affirmed as Reformed, Affirmed, and Memorandum Opinion filed August 16, 2018.**



In the

# Fourteenth Court of Appeals

## NO. 14-17-00312-CR
## NO. 14-17-00313-CR

## ANTHONY JAMALL JOHNSON, Appellant

v.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 262nd District Court
### Harris County, Texas
### Trial Court Cause Nos. 1507537 & 1507538

## M E M O R A N D U M   O P I N I O N

Appellant Anthony Jamall Johnson was convicted by jury of two felony offenses: possession of at least 80 and less than 4,000 abuse units of controlled substance 25I-NBOMe with the intent to deliver (cause number 1507537) and possession of controlled substance methamphetamine weighing more than 4 and less than 200 grams with the intent to deliver (cause number 1507538).  Appellant was

sentenced to fifteen years of confinement for each offense, to run concurrently. Appellant brings four issues: (1) the trial court abused its discretion in denying appellant's motion to suppress the drugs; (2) the trial court abused its discretion in admitting evidence related to appellant's extraneous conduct during both the guilt/innocence and punishment phases; (3) there was legally insufficient evidence linking appellant to the drugs to prove possession; and (4) the trial court's judgment in cause number 1507537 misstates the jury verdict and should be reformed. We reform the judgment in cause number 1507537 and otherwise affirm. We affirm the judgment in cause number 1507538 in its entirety.

## I. BACKGROUND

Appellant was indicted for felony possession with intent to deliver two controlled substances—(1) at least 80 and less than 4,000 abuse units of 25I-NBOMe[1] and (2) methamphetamine weighing more than 4 and less than 200 grams—alleged to have been committed on or about January 25, 2016.

On January 25, 2016, at approximately 4:30 a.m., Officer M. Wilson with the Houston Police Department, responded to a 911 possible-burglary-in-progress call from a residence on Dragonwick Drive. Appellant's mother, Lisa Johnson, was outside the residence "frantic" and "scared." Johnson told Wilson that she had been inside when she heard what she thought was someone trying to get into the house. Johnson heard the noises coming from "[h]er son's bedroom." Her son goes to the house "every day" but was not there at the time. Johnson ran out the back door without locking it, exited the gate on the side of the house, got into her car, drove away and parked in front of her neighbor's house. She called 911 from her car.

---

[1] 25I-NBOMe is a trade name for the chemical compound "4-Iodo-2,5-dimethoxy-N-(2-methoxybenzyl)phenethylamine." Tex. Health & Safety Code Ann. § 481.1021(a)(2)(B) (West 2017).

Johnson told Wilson she saw a black male wearing a jacket trying to get into her son's bedroom window.

Other officers arrived and set up a perimeter. Wilson went to the back of house and checked the window Johnson suspected someone had been trying to enter. Wilson smelled marijuana through the slightly open window. When he moved the blinds aside, Wilson saw a "bottle of Promethazine" or "syrup." After the K-9 unit arrived, Wilson entered the house with the K-9 officer and the K-9 dog. They checked all the rooms to make sure there was no one inside. When they entered what Johnson said was her son's bedroom, Wilson saw: a towel on the floor under the door to "block the smell" of weed; a gun propped up against the wall; an open dresser drawer containing two guns; and an open safe containing marijuana. There were multiple narcotics "laying out" on top of the safe.

Wilson informed Johnson that they did not find anyone inside but they saw "drugs and guns" in plain view. Wilson asked for her consent to search the house. Wilson explained the consent form to her, and Johnson read and signed it. The search of appellant's bedroom yielded another gun (in the closet), as well as "pill bottles with his name and like prescription medicine." There was men's clothing and multiple pieces of mail addressed to appellant at the residence. Officers also located clear plastic bags and a scale. The officers collected the drugs and guns. There were no drugs or guns anywhere else in the house except appellant's bedroom. After performing a computer search, Wilson was able to pull up appellant's "real name and a [driver's license] picture and address to this house."

In April 2016, felony arrest warrants were issued for appellant. On April 28, 2016, as HPD officers conducted surveillance on the Dragonwick residence, appellant was observed leaving the house in a vehicle. Officer I. Frost performed a traffic stop and executed the warrants on appellant. The vehicle smelled of

marijuana, and appellant was yelling and uncooperative during the arrest. Frost also testified that on July 28, 2016, he had "occasion to come into contact" with appellant at the Dragonwick residence and observed him coming out of the "middle" bedroom.[2]

D. Huang, a forensic analyst with the controlled substances section of the Houston Forensic Science Center, testified at trial. He stated that one substance he tested was 25I-NBOMe, a hallucinogen with effects and dosage similar to LSD, and another substance was methamphetamine. The total amount of 25I-NBOME was 150 abuse units[3]; the total amount of methamphetamine was 21.12 grams.

The jury found appellant guilty of the two possession with intent to deliver offenses for 25I-NBOMe and methamphetamine. Appellant pleaded true to an enhancement paragraph alleged in both cases related to a January 2009 felony conviction for delivery of a controlled substance. At the punishment phase, Frost testified that during the July 2016 incident, he went to the Dragonwick residence to execute arrest warrants related to the January 2016 cases. Appellant was uncooperative and had to be forcibly detained. Frost performed a protective sweep to clear the house. When he entered the bedroom appellant had exited, "there was immediately apparent narcotics in plain view as well as body armor" and a scale. Police seized 5.67 total grams of methamphetamine and the body armor. The jury assessed appellant fifteen years of confinement for each offense, to run concurrently. Appellant timely appealed.

---

[2] For ease of reference, we refer to the events of July 28, 2016, as the "July 2016 incident."

[3] Huang testified that each abuse unit is a "little square" stamp meant to be placed under the tongue.

## II.    ANALYSIS

### A. Appellant's links to the 25I-NBOMe and the methamphetamine

We first address appellant's third issue because legal sufficiency is a rendition point.  *See Jackson v. State*, 495 S.W.3d 398, 405 n.5 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).  Appellant argues that the evidence is insufficient to support his convictions for possession with intent to deliver 25I-NBOMe and methamphetamine because the evidence did not affirmatively link him to the drugs.

A person commits an offense if he knowingly possesses with intent to deliver 80 or more but fewer than 4,000 abuse units of 25I-NBOMe.  Tex. Health & Safety Code Ann. §§ 481.1021(a)(2)(B), 481.1121(a), (b)(3) (West 2017).  A person commits an offense if he knowingly possesses with intent to deliver methamphetamine weighing in the aggregate, including adulterants and dilutants, 4 grams or more but less than 200 grams.  Tex. Health & Safety Code Ann. §§ 481.102(6) (West 2017 & Supp. 2017), 481.112(a), (d) (West 2017).  Appellant does not dispute that "once past the threshold of proving possession, there was sufficient evidence for the jury to find an intent to deliver."  To prove the unlawful possession of a controlled substance, the State must establish that the accused (1) exercised care, control, custody, or management over the contraband and (2) knew that the substance possessed was contraband.  *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *abrogated on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015).  Possession may be proved through either direct or circumstantial evidence.  *Id.* at 405–06.

"When the accused is not in exclusive possession of the place where the contraband was found, it can not be concluded that appellant had knowledge of or control over the contraband unless there are additional independent facts and circumstances that affirmatively link appellant to the contraband." *Avila v. State*, 15

5

S.W.3d 568, 573 (Tex. App.—Houston [14th Dist.] 2000, no pet.). "Links" are established when the evidence shows that the accused's connection with the contraband was more than just fortuitous. *Poindexter*, 153 S.W.3d at 405–06. "We consider the totality of the circumstances when determining whether the accused is linked to the recovered contraband." *Roberts v. State*, 321 S.W.3d 545, 549 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). We have identified a nonexhaustive list of relevant factors that may establish, either individually or in combination, the accused's possession of contraband:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view[;] (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.), *cited in Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006). Additionally, a large quantity of contraband may be a factor affirmatively linking appellant to the contraband. *See id.* at 292. The number of links present is not dispositive; establishing possession depends on the logical force created by all the evidence. *Evans*, 202 S.W.3d at 162. In addition, "[t]he absence of various links does not constitute evidence of innocence to be weighed against the links present." *Satchell v. State*, 321 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (citing *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976)).

6

Although appellant was not present when the officers searched the Dragonwick residence, Johnson told Wilson that appellant had access to the home, is there "every day," and had been there "earlier in the day." Johnson told Wilson it was appellant's bedroom that she thought a burglar was attempting to enter. There was also evidence that appellant was observed leaving the Dragonwick residence on the day he was arrested and exiting the "middle" bedroom of the Dragonwick residence during the July 2016 incident. Given the evidence of appellant's accessibility to the bedroom, at best factor (1) is neutral.

Factor (2) favors a link. When police executed the protective sweep and the later search pursuant to consent, multiple narcotics were in plain view in the bedroom, including "LSD blot paper"[4] and "meth." Factor (3) is tempered by the fact that appellant was not in proximity to the drugs at the time of the search, but the narcotics were easily accessible to him since there was evidence that they were "laying out" in his bedroom and that he accessed the house on a daily basis. At best, this factor is neutral.

Factors (4) and (5) tend to favor a link where police smelled marijuana coming from the inside of the vehicle during the traffic stop when appellant was arrested for the January 2016 offenses. Although factors (6), (7), and (8) do not favor a link where appellant did not make any incriminating statements, attempt to flee, or make furtive gestures when arrested, he was uncooperative, yelled profanities, refused to obey officers' commands, and reported breathing issues that required EMS care despite being "in perfect health." This "out of the ordinary" behavior during his arrest could support a reasonable inference of consciousness of guilt; factor (14) favors a link. *See Roberson v. State*, 80 S.W.3d 730, 740 (Tex. App.—Houston [1st

---

[4] *See supra* notes 1 & 3.

Dist.] 2002, pet. ref'd) (appellant's inconsistent statements regarding relationship with other occupant of car indicated general consciousness of guilt); *Leyva v. State*, 840 S.W.2d 757, 759–60 (Tex. App.—El Paso 1992, pet. ref'd) ("odd" and "suspicious" behavior can demonstrate consciousness of guilt).

Factor (9) does not favor a link as there is no evidence that the 25I-NBOMe or methamphetamine in the bedroom emitted any odor. However, factor (10) favors a link where the bedroom also contained marijuana, cocaine, Xanax, Ecstasy, Lortab, Tylenol with codeine, Promethazine, multiple guns, ammunition, a scale, wrapping papers, a marijuana grinder, and plastic baggies. *See Jackson*, 495 S.W.3d at 407 (scale, beaker used to make crack cocaine, and empty pharmacy bottles also present); *Haggerty v. State*, 429 S.W.3d 1, 4, 7 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (multiple digital scales, tools for cooking crack cocaine, and two substances that commonly serve as adulterants for cocaine also present); *Hargrove v. State*, 211 S.W.3d 379, 386 (Tex. App.—San Antonio 2006, pet. ref'd) (digital scales, body armor, multiple weapons, and ammunition also present). Wilson testified that the presence of these all these items together indicated that appellant had a "pharmacy" for his "clients" and was engaged in the "dangerous business" of delivering drugs instead of "personal consumption."

With regard to factor (11), various items tied appellant to the bedroom in the Dragonwick residence: mail addressed to him, a prescription bottle containing his name, and male clothing likely to fit him. Also, the address for appellant's driver's license was the Dragonwick residence. His mother stated that appellant was at the house daily and identified his bedroom. *See Jackson*, 495 S.W.3d at 406–08 (mail addressed to appellant and presence of male clothing favored right of possession at girlfriend's apartment); *Hargrove*, 211 S.W.3d at 384–86 (evidence favored right of possession where bills were addressed to and appellant paid bills associated with

home shared with ex-girlfriend, appellant often stayed overnight at the home, and home contained his clothing); *Cooper v. State*, 852 S.W.2d 678, 681–82 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (presence in bedroom of clothes that appeared to fit appellant and envelopes addressed to him at wife's home favored right of possession); *Brown v. State*, 807 S.W.2d 615, 617 (Tex. App.—Houston [14th Dist.] 1991, no pet.) (mail addressed to appellant at mobile home, testimony that appellant lived at trailer park with wife, and that he paid rent checks favored right of possession). Appellant argues that he did not have the sole right to possess the premises where the drugs were found. However, control over contraband need not be exclusive, but can be jointly exercised by more than one person. *Haggerty*, 429 S.W.3d at 7. Appellant points to no evidence, and the record does not reflect, that Johnson shared possession. *See id.* Appellant also was seen leaving the house in April 2016 when he was arrested and exiting the bedroom in question during the July 2016 incident. This factor favors a link.

Factor (12) favors a link. There was evidence that appellant rolled a towel underneath the door in an attempt to contain the smell of marijuana and "enclose" the bedroom containing the drugs. Factor (13) does not favor a link because appellant was not found with a large amount of cash. Finally, the large amount and variety of drugs contained in the bedroom, which Wilson described as a "pharmacy," also favors a link. *See Olivarez*, 171 S.W.3d at 292.

While the number of links present is not dispositive, more than half of the factors indicate that appellant's connection to the 25I-NBOMe and methamphetamine was more than just fortuity here. *See Evans*, 202 S.W.3d at 161–62. Considering the totality of the circumstances, we conclude that the links established by the logical force of this evidence are sufficient to support a finding that appellant knowingly possessed with the intent to deliver at least 80 and less than

4,000 abuse units of 25I-NBOMe and methamphetamine weighing more than 4 and less than 200 grams.  We overrule appellant's third issue.

## B. Denial of the motion to suppress

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion.  *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005).  We must view the evidence in the light most favorable to the ruling.  *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007).  At a suppression hearing, the trial judge is the sole trier of fact and assesses the witnesses' credibility and the weight to give witnesses' testimony.  *Id.* at 24–25.  We give almost total deference to the trial court's determination of historical facts, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor.  *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We afford the same amount of deference to the trial court's application of the law to facts if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor.  *Id.*  We review de novo the trial court's application of the law to facts if resolution of those ultimate questions does not turn on an evaluation of credibility and demeanor.  *Id.*  When there are no written findings of fact in the record, we uphold the ruling on any theory of law applicable to the case and presume the trial court made implicit findings of fact in support of its ruling so long as those findings are supported by the record.  *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000); *Kelly v. State*, 331 S.W.3d 541, 547 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

In his first issue, appellant argues that the trial court abused its discretion by not granting his motion to suppress the evidence seized without a warrant at the Dragonwick residence in January 2016.  Appellant contends that police exceeded the permissible scope of the protective sweep.  Appellant further asserts that the search was not justified by exigent circumstances, and Johnson's consent to search

"was not truly voluntary."

*Protective sweep.* A protective sweep is a quick, limited search of the premises, generally incident to arrest and conducted to protect the safety of law enforcement or others. *Reasor v. State*, 12 S.W.3d 813, 815 (Tex. Crim. App. 2000) (citing *Maryland v. Buie*, 494 U.S. 325, 328 (1990)). "[A] police officer may sweep the house only if he possesses an objectively reasonable belief, based on specific and articulable facts, that a person in that area poses a danger to that police officer or to other people in the area." *Id.* at 817. "[T]his sweep must stay within the appropriate scope and may last long enough to 'dispel the reasonable suspicion of danger.'" *Id.* The sweep is to be "narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Buie*, 494 U.S. at 327.

Appellant does not dispute that the police lawfully entered the Dragonwick residence to respond to the burglary call and ensure that it was safe for Johnson to return to her house. Appellant instead claims that the police exceeded the limited scope of the protective sweep and "proceeded to search the side bedroom before seeking Johnson's consent." We disagree. The evidence indicates it was during the protective sweep that Wilson viewed the drugs and guns in appellant's bedroom. At the suppression hearing, Wilson testified that, as the K-9 officer and the K-9 dog entered each room to check for people, Wilson was with them and was "in the room when it's being cleared." According to Wilson, when they entered appellant's bedroom, Wilson saw guns and drugs: "What I'm saying to you is you can see this stuff in plain view." Wilson further stated, "The protective sweep is the intent, but I can't unsee what's in the room while I'm in there." During the sweep, Wilson only performed a visual inspection. He did not move any furniture and did not open the safe or any drawers, which were already open. *Cf. Torrez v. State*, 34 S.W.3d 10, 18 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). The trial court was free to

11

believe Wilson's testimony. *See Wiede*, 214 S.W.3d at 24–25; *Kelly*, 331 S.W.3d at 547.

*Consent to search.* We need not determine whether the exception for exigent circumstances applies because we conclude that the search was supported by valid consent. A search conducted pursuant to voluntary consent is an established exception to the constitutional warrant requirement. *Reasor*, 12 S.W.3d at 817 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 223 (1973)).[5] Texas law requires the State to prove voluntariness of consent to search by clear and convincing evidence, rather than by a mere preponderance of the evidence. *Id.* at 817–18; *Graham v. State*, 201 S.W.3d 323, 330 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (under federal constitution, standard is preponderance of evidence; under Texas Constitution, standard is clear and convincing evidence). To be valid, consent to search must be positive and unequivocal and must not be the product of duress or coercion, either express or implied. *Graham*, 201 S.W.3d at 330 (citing *Reasor*, 12 S.W.3d at 818). The trial court must look at the totality of the circumstances surrounding the statement of consent to determine whether consent was given voluntarily. *Reasor*, 12 S.W.3d at 818. We consider various factors in determining voluntariness of consent: age, education, and intelligence; any constitutional advice given, such as whether the consenting person had the option to refuse consent; the repetitiveness of questioning; the use of physical punishment; whether the consenting person was in custody or restrained at the time, and the length of any such detention; and whether weapons were drawn. *See Cadoree v. State*, 331 S.W.3d

---

[5] In *Reasor*, the Court of Criminal Appeals concluded that, despite an illegal protective sweep, where the appellant later gave officers voluntary consent to search his home, any taint from the illegal sweep was sufficiently attenuated. 12 S.W.3d at 819. There, the suspect was brought, in handcuffs, into his residence and asked to sign a consent to search form for his residence. *Id.* at 815.

514, 520 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). "An officer's testimony that consent was voluntarily given can be sufficient evidence to prove the voluntariness of the consent." *Kelly*, 331 S.W.3d at 547 (citing *Martinez v. State*, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000)).

Appellant asserts that Johnson's consent was not voluntary. We disagree. Wilson testified that after the house was cleared he informed Johnson that he had seen drugs and guns in appellant's bedroom. Wilson requested Johnson's consent to search the house and provided her with the consent form. Johnson was not considered a suspect at the time. She was not detained and no weapons were drawn. According to Wilson: "I didn't make her sign it. She has the option, if you read the Consent to Search form, she read it and was able to sign it." The consent form states the individual understands that she has a constitutional right to not have her property searched without a warrant but may consent voluntarily. Wilson stated that he did not "put[] pressure on" Johnson or threaten her to sign the consent form. Wilson's testimony, which the trial court was free to believe, clearly shows that Johnson's consent was voluntary. *See id.*; *Graham*, 201 S.W.3d at 330.

Appellant relies on *Cooksey v. State*, 350 S.W.3d 177 (Tex. App.—San Antonio 2011, no pet.). *Cooksey* is distinguishable. There, the appellant consented to the search under circumstances where the police had just entered his backyard illegally and seen marijuana plants on his back steps and where the consent form the appellant signed contained no written warnings that he could decline to consent. *See id.* at 187–88. We also decline appellant's request to consider Johnson's post-search statements and behavior in our determination of whether her consent to search was voluntary. *See Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990) (determination of consent must be judged against objective standard, i.e., "the facts available to the officer at the moment").

13

Deferring, as we must, to the trial court's determinations of credibility and historical facts, we conclude that the trial court reasonably could have found that the police executed a valid protective sweep, and that the subsequent search was supported by voluntary consent. Therefore, the trial court acted within its discretion in denying the motion to suppress. We overrule appellant's first issue.

## C. Admission of extraneous evidence

In his second issue, appellant argues that the trial court abused its discretion when it permitted the State to present extraneous-offense evidence relating to the July 2016 incident during both phases of the trial.

*Guilt/innocence phase.* Evidence of extraneous offenses is not admissible at the guilt/innocence phase of a trial to prove that a defendant committed the charged offense in conformity with a bad character. Tex. R. Evid. 404(b)(1); *see Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005). However, extraneous offense evidence may be admissible when it has relevance apart from character conformity. *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003); *Robbins v. State*, 88 S.W.3d 256, 259 (Tex. Crim. App. 2002). For example, it may be admissible to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex. R. Evid. 404(b)(2); *Martin*, 173 S.W.3d at 466. Whether extraneous offense evidence has relevance apart from character conformity, as required by rule 404(b), is a question for the trial court. *Martin*, 173 S.W.3d at 466 (citing *Moses*, 105 S.W.3d at 627). Evidence is relevant to such an issue if the purpose for which the party seeks to have it admitted tends to make "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Smith v. State*, 5 S.W.3d 673, 679 & n.13 (Tex. Crim. App. 1999).

Evidence relevant to a "noncharacter conformity issue of consequence" under

rule 404(b) may be inadmissible under rule 403 if the trial court determines that the probative value of the evidence is "substantially outweighed" by the danger of unfair prejudice. Tex. R. Evid. 403. Evidence is unfairly prejudicial when it has "an undue tendency to suggest that a decision be made on an improper basis." *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000) (citing *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g)). In determining whether the trial court abused its discretion in admitting the evidence, we balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42, 642 n.8 (Tex. Crim. App. 2006).

We presume that the probative value of relevant evidence substantially outweighs the danger of unfair prejudice from admission of that evidence. *Martinez v. State*, 468 S.W.3d 711, 718 (Tex. App.—Houston [14th Dist.] 2015, no pet.). "It is therefore the defendant's burden to demonstrate that the danger of unfair prejudice substantially outweighs the probative value." *Kappel v. State*, 402 S.W.3d 490, 494 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Because the trial court is in the best position to decide these admissibility questions, we review a trial court's admissibility decision for abuse of discretion. *Robbins*, 88 S.W.3d at 259–60, 262 (citing *Montgomery*, 810 S.W.2d at 391–93). We uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement. *Id.* at 260. "[W]e are to reverse the trial court's judgment rarely and only after a clear

15

abuse of discretion." *Kappel*, 402 S.W.3d at 494 (internal quotation marks omitted).

At the beginning of the guilt/innocence phase, the trial court held a hearing regarding the State's request "that extraneous evidence" from the July 2016 incident "be admissible." The State anticipated that identification would be at issue since appellant was not present when the drugs were located at the Dragonwick residence in January 2016.[6] Appellant requested a ruling as to whether the evidence of the July 2016 incident was "going to be allowed in [the State's] case-in-chief" and asked that it "be excluded under [rules] 404 and 403." At that time, the trial court did not issue a ruling:

> Well, I'll take some time to go read these cases. I assume that y'all had an agreement that we would handle that during the course of the trial, and we would have a hearing at that time, but if you need a ruling on it right now, I'll read these cases and make a decision.

When the State was ready to proffer testimony of the July 2016 incident through Frost, the State stated it would only use the evidence "to prove identification," and would not talk about appellant's bond violation, or about how police found methamphetamine and body armor. Appellant indicated he wanted to suppress that the police were executing an arrest warrant "because . . . it sounds like we have another case." The following exchange took place:

> THE COURT: Well, the suppression issue that [defense counsel is] arguing, I think, will turn on whether or not you feel that this testimony is more prejudicial than probative and I don't believe it is because based on the state of the evidence, I think that certainly [the prosecutor is] entitled to get into some more probative information about why the nexus between this house and this Defendant needs to be shown, and that's the way he wants to do it. So, I agree with that.
>
> [DEFENSE COUNSEL]: I guess my whole thing is if we can put that it's a traffic—I just don't want it to say arrest warrant because then it

---

[6] The State also stated that the evidence was relevant to a common plan and scheme.

applies new—

THE COURT: You might get him to agree to that to avoid some controversy here.

[DEFENSE COUNSEL]: Because then it ties my hands, like, I'm just letting this officer come in his house for no reason.

[PROSECUTOR]: Judge, would it work if—I guess that's the whole argument is there's no other way to get around the fact that they're there for an arrest warrant.

(Discussion between the attorneys off the record.)

[PROSECUTOR]: Judge, I think we can agree. When we originally approached you, we said that we would go the generic route. So, basically, saying that on this particular date did you have an occasion to come in contact with this Defendant at his home? The question would be, yes. And then sort of what happened? What did you see? Without going into the fact that he was arrested. Without going into the fact that there was a warrant. Without going into the fact of what was found in the home.

THE COURT: For purposes of what you want to show the jury, I think that's absolutely correct. So long as you're satisfied with the way he's going to do it will not be any prejudice to your client.

[DEFENSE COUNSEL]: As long as we're not getting into arrest warrant or the fact that they arrested him or handcuffed him or anything like that because that's what I was thinking is they're going to make this whole scene where he crawls across the living room floor.

[PROSECUTOR]: All I'm concerned about is the identification.

THE COURT: Okay. That's fine. We all have that agreement? And does the officer understand?

[DEFENSE COUNSEL]: Can we put this on the record? The other officer did not adhere to the excited utterance at all.

THE COURT: Let's do this outside the presence of the jury so we make sure we have an agreement. Go ahead.

The State questioned Frost outside the presence of the jury. Afterward, the following exchange occurred:

THE COURT: Is that all right?

17

[DEFENSE COUNSEL]: Assuming we're taking a lot of that out, as far as the mom coming [sic] being crazy upset.

THE COURT: And, basically, just for the record, this is to show the nexus between the Defendant living in that house and that being his room inside that residence; is that correct?

[PROSECUTOR]: Yes, sir.

Frost testified that on July 28, 2016, he had occasion to come into contact with appellant at the Dragonwick residence. According to Frost, appellant was coming "out of the bedroom that was located on kind of the central eastern part of the home." Frost stated he did not know whether this was the same room where the narcotics had been found. Appellant cross-examined Frost regarding where exactly he had seen appellant in the house.

We conclude, and the record reflects, the parties came to an agreement that the July 2016 incident would be admitted during guilt/innocence through Frost solely for identification. The only detail to be elicited was "the fact that [appellant] was [at the Dragonwick residence], and [Frost] saw [appellant] there coming out of that bedroom." The agreement appeared to cover both the admissibility under rule 404(b) and the "more probative than prejudicial" nature under rule 403 during guilt/innocence of Frost's testimony regarding the July 2016 incident. Appellant never expressed any dissatisfaction to the trial court that the State did not adhere to the parties' agreement.

On appeal, appellant does not mention any agreement. Instead, he argues: "Whatever limited probative value the extraneous offense may have had, a lapse of six months attenuated its probative value such that it was far outweighed by its prejudicial impact under Tex. R. Evid. 403." Assuming that appellant preserved any such error under rule 404(b) or 403, we disagree.

*Rule 404(b).* "The trial judge has considerable latitude in determining that

18

identity is, in fact, disputed." *Segundo v. State*, 270 S.W.3d 79, 86 (Tex. Crim. App. 2008). Here, appellant does not dispute that he placed at issue his identity as the perpetrator based on alleged lack of control and access to the bedroom and the drugs. *See id.* ("The question is whether impeachment occurred that raised the issue of identity. If so, Rule 404(b) permits the introduction of extraneous offenses that are relevant to the issue of identity."). Appellant cross-examined Wilson regarding appellant's not being at the Dragonwick residence in January 2016 at the time of the charged offenses. Such cross-examination attempted to downplay appellant's ties to the bedroom and to the items found in it, as well as attempted to show that the police did not properly investigate other bedrooms or potential family occupants of the house. Indeed, when asked by the trial court, appellant agreed that his contention was there was no nexus between him and this bedroom and this house other than his mother lived there.

Even when identity is an issue in the case, an extraneous offense is admissible to show identity only if the charged offense and the extraneous offense share sufficiently distinct characteristics. *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006). To the extent that Frost's limited testimony about seeing appellant exit the bedroom concerned any later crime, wrong, or other act to prove conduct in conformity with bad character under rule 404(b), there were sufficient similarities between the charged offenses and the July 2016 incident to support that such testimony was relevant for identification. The record reveals that outside the presence of the jury, the trial court inquired into the facts that tied appellant to the bedroom at the Dragonwick residence—noting the July 2016 incident involved the same "location and the same type[s] of drugs." The State explained that "narcotics were found with packaging in the exact same locations . . . in the January case[s]." As in January 2016, mail addressed to appellant (a defensive driving certificate) was

present in the bedroom. And the July 2016 incident similarly involved a drug "pharmacy," including methamphetamine, as well as drug paraphernalia and "defensive" items, this time body armor, out in plain view. *See id.* at 338 (Texas law "does not require extraneous-offense evidence to be completely identical to the charged offense to be admissible to prove identity"); *Mason v. State*, 416 S.W.3d 720, 740–41 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) ("The extraneous offense and the charged offense can be different offenses, so long as the similarities between the two offenses are such that the evidence is relevant."); *Burton v. State*, 230 S.W.3d 846, 850–51 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("Although there are some differences between the various offenses, these differences do not necessarily outweigh the similarities and thus destroy the probative value of the extraneous offenses in proving identity."). We conclude that the evidence of the extraneous offense admitted at trial was highly probative of appellant's identity as the perpetrator of the charged offenses and therefore relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character. *See Mason*, 416 S.W.3d at 741.[7]

*Rule 403.* While the inherent probative force may have been slightly diminished by the distance in time,[8] that Frost saw appellant coming out of the

---

[7] We disagree with appellant that the July 2016 incident was too remote in time from the charged offenses to be probative. Our court has held that rule 404 "contains no time limitation." *Prince v. State*, 192 S.W.3d 49, 55 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (rejecting "remoteness" argument). Further, the case on which appellant relies, *Russell v. State*, 113 S.W.3d 530 (Tex. App.—Fort Worth 2003, pet. ref'd), is not persuasive. The *Russell* court did not rule that the trial court abused its discretion by rejecting the appellant's contention that the later offense was not admissible simply because it occurred after the charged offense. *Id.* at 537. Instead, the *Russell* court determined that the trial court abused its discretion in admitting the later offense under rule 404(b) based on identity "because it authorized an inference of guilt by association, that is, an inference that because Russell acted with Barnes in the Vogt Street offense, he also was the person who acted with Barnes in the Fast Freddy's offense." *Id.* at 541. No similar guilt-by-association concern existed here.

[8] *Russell* also does not support appellant's position under rule 403. There, despite the

20

middle bedroom of the Dragonwick residence a few months after the narcotics were found was inherently probative to identify him as the person in custody and control of that room back in January 2016. This sighting validated Johnson's description of the bedroom as her son's; i.e., even if he had been staying with a girlfriend, appellant was continuing to "come and go" daily to his bedroom at the Dragonwick residence. Moreover, the State had a fairly strong need for the testimony—Frost provided the only evidence of appellant's actual physical presence in the room, as opposed to the circumstantial presence of items linked to him such as mail and prescription bottles. This testimony also was important where appellant's theory was that he was not the "big drug dealer" operating out of that bedroom of the Dragonwick residence, and where he sought to prove during cross-examination that police did not sufficiently link him to possession of the drugs in the bedroom and failed to investigate other suspects.

Considering prejudice, there was no concern that the evidence would suggest decision on an improper basis. Being seen exiting one's bedroom is not emotionally or otherwise inflammatory. It did not arouse the jury's hostility or sympathy. *See Gigliobianco*, 210 S.W.3d at 641. Nor would such evidence tend to confuse or distract the jury from the main issue of deciding whether appellant possessed drugs with intent to deliver at the Dragonwick residence back in January 2016. *See id.* In addition, the trial court included in the guilt/innocence charge a rule 404(b) limiting instruction on the jury's use of any extraneous offenses, which we presume it followed.[9] *See Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996).

---

several-week delay between the charged capital-murder offense and a later extraneous offense that also involving a shooting, the appellate court concluded the probative nature of the evidence weighed in favor of admissibility of the later offense to show intent to commit the capital murder. 113 S.W.3d at 544.

[9] Appellant did not request a contemporaneous limiting instruction at the time of Frost's testimony.

Finally, the State developed this evidence in just over one page of the trial transcript and such evidence was not repetitive.[10] We decline appellant's invitation to include the time spent out of the presence of the jury on motions and arguments concerning Frost's testimony. *See Dennis v. State*, 178 S.W.3d 172, 181 & n.2 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

Upon balancing the rule 403 factors, the trial court reasonably could have concluded that the probative value of Frost's testimony regarding the July 2016 incident was not substantially outweighed by the countervailing prejudice factors. Therefore, the trial court did not abuse its discretion in permitting Frost's testimony regarding the July 2016 incident during guilt/innocence.

*Punishment phase.* Appellant argues that the trial court committed an abuse of discretion by permitting evidence of the July 2016 incident (specifically, the drugs and body armor located, as well as appellant's uncooperative behavior) to be admitted during punishment.[11] According to appellant, "[a]dmission of the extraneous offense on punishment, much as in guilt/innocence, raises a comparable issue of attenuated probative value being outweighed by prejudicial impact."[12] However, with regard to the punishment phase, appellant's only objection to admission of evidence of the July 2016 incident came in the form of a motion to

---

[10] By way of comparison, appellant cross-examined Frost on this issue for approximately five pages.

[11] During the punishment phase, the State may offer evidence as to any matter the trial court deems relevant to sentencing, including evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt to have been committed by the defendant or for which he could be held criminally responsible. Tex. Code Crim. Pro. Art. 37.07 § 3(a)(1) (West 2017). The trial court included in the punishment charge an article 37.07 limiting instruction regarding the jury's use of any extraneous crimes or bad acts.

[12] Article 37.07, section 3, also "does not provide a time restriction." *Fowler v. State*, 126 S.W.3d 307, 310–11 (Tex. App.—Beaumont 2004, no pet.) (rejecting "remoteness" argument); *see Rodriguez v. State*, 345 S.W.3d 504, 508 (Tex. App.—Waco 2011, pet. ref'd) (citing *Fowler*, 126 S.W.3d at 310–11, for same).

suppress based on an invalid protective sweep, which the trial court denied.[13] Appellant did not object under either article 37.07 or rule 403. *See Montgomery*, 810 S.W.2d at 388–89; *Saldivar v. State*, 980 S.W.2d 475, 492–93 (Tex. App.— Houston [14th Dist.] 1998, pet. ref'd). Because appellant's subissue on appeal does not correspond to the objection made at trial, we conclude that appellant failed to preserve error. *See* Tex. R. App. P. 33.1; *Lara v. State*, 513 S.W.3d 135, 140 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Orellana v. State*, 489 S.W.3d 537, 547 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

We overrule appellant's second issue.

## D. Reformation of judgment in cause number 1507537

In appellant's final issue, with which the State agrees, he requests that this court reform the judgment in cause number 1507537 to reflect the correct offense of which he was convicted—the offense involving possession with intent to deliver at least 80 and less than 4,000 abuse units of 25I-NBOMe. *See* Tex. R. App. P. 43.2(b). The current judgment reflects that appellant was convicted of: "POSS W/INT DEL/MAN/DEL PG1 >=4<200G." It instead should state that appellant was convicted of: "POSS W/INT DEL/MAN/DEL PG1-A >=80<4,000AU." We sustain appellant's fourth issue.

## III.   CONCLUSION

Having overruled appellant's first three issues, we affirm appellant's convictions in both of his felony cases. We affirm the trial court's judgment in cause number 1507538. Having sustained appellant's fourth issue, we reform the trial court's judgment in cause number 1507537 to reflect the correct penalty group (1-A) and amount of drug (at least 80 and less than 4,000 abuse units), and otherwise

---

[13] Appellant does not challenge the trial court's denial of this motion to suppress on appeal.

23

affirm that judgment.

/s/     Marc W. Brown
        Justice

Panel consists of Justices Busby, Brown, and Jewell.
Do Not Publish — TEX. R. APP. P. 47.2(b).